Filed 4/24/14  In re S.W. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.W., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>F.M. et al.,<br><br>    Defendant and Appellant. | A139049, A139594<br><br>(San Francisco County<br> Super. Ct. No. JD-123154) |

This is an appeal from a decision by the juvenile court to terminate the parental rights of appellants F.M. (mother) and S.W. (alleged father) to their daughter, also S.W. (minor), who was born in the fall of 2003.  Mother challenges this decision on the ground that the court lacked subject matter jurisdiction over minor.  Alleged father, in turn, challenges the decision for lack of proper notice.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 1, 2012, a petition was filed in San Francisco Juvenile Court pursuant to Welfare and Institutions Code section 300, subdivisions (b), (c) and (g), based on allegations that parents had failed to protect minor, failed to offer adequate provision for her support, and caused or exposed her to significant risk of serious emotional damage (section 300 petition).  According to the section 300 petition, mother was incarcerated in Texas and subject to a no-contact order with respect to minor for having physically and

1

mentally abused her, and minor's legal guardian, a maternal great aunt living in Tennessee, had relinquished the guardianship and was unable to provide for her care. Specifically, it was alleged the legal guardian had taken minor, who was depressed, suicidal and required psychotropic medicines, from Tennessee to the home of her maternal grandmother in California. The maternal grandmother, however, was also unable to provide care for minor and, thus, had contacted the agency for assistance. The whereabouts of alleged father were unknown, and both he and mother, who had never married, had substance abuse problems.

The section 300 petition further alleged minor had been the subject of several prior referrals to child protective services, including one in Alameda County in 2007 for physical abuse, which was found inconclusive, and three in Texas between 2008 and 2010 for physical abuse and neglect, at least one of which was substantiated.

The agency thereafter filed a report in anticipation of the June 4, 2012, detention/jurisdiction hearing that identified an Oakland telephone number for alleged father, but no address. The report also provided additional information about minor's circumstances. In particular, the report noted that, several years ago, maternal grandmother had been given temporary custody of minor when mother was incarcerated in Texas for abusing her, but that maternal grandmother had sent minor to live with a relative in Georgia when she became unable to provide care. The Georgia relative then sent minor back to maternal grandmother after deciding she, too, was unable to care for minor, who at that time was depressed and suicidal. A few months later, in November 2011, maternal grandmother sent minor to live with her maternal great aunt in Tennessee, where she could attend public school and enjoy a rural setting. Shortly thereafter, the maternal great aunt was appointed legal guardian of minor by the Tennessee juvenile court. However, as mentioned above, the maternal great aunt ultimately decided she could not care for minor and, thus, on May 25, 2012, took her back to maternal grandmother in California without prior notice to maternal grandmother, prompting commencement of these proceedings.

2

Following the detention hearing, the juvenile court found a prima facie case had been made pursuant to the identified subdivisions of Welfare and Institutions Code section 300 and ordered that minor be detained. In doing so, the court first ordered minor's temporary detention on an emergency basis and then, two days later following a continued hearing at which mother made her first appearance, the court ordered her permanent detention, noting: "Given the history of this case and given how much this child has been shuttled around over the last however many months, I am most concerned about her stability at this point."

The agency prepared another report, file-stamped July 3, 2012, for the jurisdiction/disposition hearing. This report indicated that alleged father's whereabouts remained unknown and that mother was in a Santa Clara jail awaiting extradition to Texas on probation violations. The report recommended no reunification services for mother due to her impending incarceration, and declined to assess alleged father's need for services due to the agency's inability to locate him. This report was subsequently amended to include information that mother had been sentenced to four years in Texas prison, and that alleged father's whereabouts remained unknown despite further efforts by the agency to locate him.[1] According to alleged father's mother, he had not been in contact with minor for over five years and was reluctant to come forward due to child support concerns.

At the conclusion of the July 11, 2012, jurisdiction/disposition hearing, the juvenile court sustained the allegations in the section 300 petition,[2] declined to order

---

[1] As we will discuss later in our discussion of the lack-of-notice issue raised on appeal by alleged father, the agency submitted several due diligence statements describing its efforts to locate alleged father. (Pp. 13-15.) Also reserved for later is discussion of the juvenile court's contacts with the Tennessee juvenile court that had established the maternal great aunt's legal guardianship over minor, facts relevant to mother's jurisdictional challenge. (Pp. 10.)

[2] At a subsequent September 18, 2012 hearing, the agency amended the section 300 petition in certain respects, and added the following language to the subdivision (g) allegations: "[t]he legal guardian is no longer willing to provide care for the child and has relinquished her legal guardianship."

reunification services for parents, declared minor a dependent, and set a permanency planning hearing pursuant to Welfare and Institutions Code section 366.26. In anticipation of the permanency planning hearing, the agency submitted a report indicating that minor had been placed with a Bay Area foster family that had indicated a desire to adopt her. Further, although continuing to exhibit emotional and behavioral shortcomings (including lying, stealing and disrupting her class at school), minor was making improvements in other respects. Among other things, minor appeared bonded with her foster/prospective adoptive family, including a foster sibling around the same age, and was being treated by a psychiatrist for several mental health concerns stemming from her past abuse, including ADHD and PTSD. While the adoptive home study had not yet been completed, the agency nonetheless recommended terminating parental rights.

On June 26, 2013, following the permanency planning hearing at which argument was heard from counsel for both parents and minor, the juvenile court, among other things, found by clear and convincing evidence minor was likely to be adopted and adopted the agency's recommendation to terminate parental rights. The court then set a six-month postpermanency review hearing for October 7, 2013. Both parents timely appealed.

## DISCUSSION

Mother and alleged father challenge the order terminating their parental rights on distinct grounds. Mother contends the juvenile court lacked subject matter jurisdiction or emergency temporary jurisdiction to issue the challenged order. Alleged father, in turn, contends the agency failed to employ reasonable diligence in searching for him prior to disposition, such that he lacked proper notice of the dispositional/ jurisdictional proceedings, requiring remand for a new hearing. We address each contention in turn below.

## I.     Did the juvenile court have jurisdiction over minor?

The UCCJEA, formerly the UCCJA, was adopted in California effective January 1, 2000, and is now codified in Family Code section 3400 et seq (the Act or

4

UCCJEA).[3] "The Act is the exclusive method of determining the proper forum in custody disputes involving other jurisdictions and governs juvenile dependency proceedings. (§§ 3402, subd. (c), 3421, 3423, 3424, subd. (a); *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1173 [108 Cal.Rptr.2d 493].)" (*In re C.T.* (2002) 100 Cal.App.4th 101, 106; *In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037, fn. 18.)

" '[S]ubject matter jurisdiction [under the UCCJEA] either exists or does not exist at the time the action is commenced' [citations], which is when the first pleading is filed. (§ 3402, subd. (e).) 'There is no provision in the UCCJEA for jurisdiction by reason of the presence of the parties or by stipulation, consent, waiver, or estoppel.' ([Citation]; see § 3421, subd. (c) ['Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.'].)" (*In re Marriage of Fernandez-Abin & Sanchez, supra,* 191 Cal.App.4th at p. 1040.)

However, even when UCCJEA jurisdiction already rests with another state (here, Tennessee, where the legal guardianship had been ordered), the California juvenile court may exercise temporary jurisdiction if the child is present in this state and, as relevant here, "the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse." (§ 3424, subd. (a).) "The courts have interpreted 'emergency' as a situation in which a child is in immediate risk of danger if returned to a parent's care. (See *In re Stephanie M.* [(1994)] 7 Cal.4th 295 [court asserted emergency jurisdiction over an abused child diagnosed as suffering from battered child syndrome]; *In re Joseph D.* (1993) 19 Cal.App.4th 678 [23 Cal.Rptr.2d 574] [emergency jurisdiction was proper based on reported incidents involving sexual abuse by child's stepbrother and father].) Aside from the necessity of protecting a child from immediate harm, presence of the child in the state is the only prerequisite. (19 Cal.App.4th at p. 688.) [¶] . . . In cases where the validity of the allegations are uncertain, the very possibility the allegations of immediate harm might

---

[3]     Unless otherwise stated, all statutory citations herein are to the Family Code.

be true is sufficient for the court to assume emergency jurisdiction in the best interests of the children. (*In re Joseph D., supra*, 19 Cal.App.4th at p. 688.)" (*In re Nada R., supra*, 89 Cal.App.4th at p. 1174. See also *In re Angel L.* (2008) 159 Cal.App.4th 1127, 1138 [recognizing the Legislature's intent "to 'afford all children found in California the protection of California's juvenile court[s] in exigent circumstances' "], citing § 3424, subd. (e).).)[4]

"The finding of an emergency 'should not be made "in a rush to judgment" but rather "after a full and fair evidentiary hearing." [Citation.]' [Citations.] Unsubstantiated allegations are insufficient to invoke emergency jurisdiction. [Citations.]" (*In re C.T., supra*, 100 Cal.App.4th at pp. 107-108.) Under the Act, the jurisdictional finding is one

---

[4]     Section 3424, as relevant here, provides:
"(a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child . . . is subjected to, or threatened with, mistreatment or abuse. [¶] . . . [¶]

"(c) If there is a previous child custody determination that is entitled to be enforced under this part . . . any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction . . . . The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(d) A court of this state that has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 3421 to 3423, inclusive, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

"(e) It is the intent of the Legislature in enacting subdivision (a) that the grounds on which a court may exercise temporary emergency jurisdiction be expanded. It is further the intent of the Legislature that these grounds include those that existed under Section 3403 of the Family Code as that section read on December 31, 1999, particularly including cases involving domestic violence."

6

of necessity in an emergency to protect a child who has been abandoned or faces the threat of mistreatment or abuse. (I*n re Jorge G.* (2008) 164 Cal.App.4th 125, 131-132; *In re C.T., supra*, 100 Cal.App.4th at pp. 108-109.)

Further, "[a]ssumption of emergency jurisdiction is an assumption of temporary jurisdiction only. [Citation.] Therefore, while the court [may] properly exercise[] jurisdiction when . . . conduct[ing] a plenary hearing to determine whether an emergency existed, an emergency is not necessarily coextensive with the dependency." (*In re Nada R., supra*, 89 Cal.App.4th at p. 1175.) As explained by our appellate colleagues in the Fourth Appellate District, Division Three, "emergency jurisdiction is short-term and limited." (*Id*.) However, by the same token, "an emergency can exist so long as the reasons underlying the dependency exist." (*In re Nada R., supra*, 89 Cal.App.4th at p. 1175. See also *In re Angel L., supra*, 159 Cal.App.4th at p. 1139 ["[e]ven though emergency jurisdiction ordinarily is intended to be short term and limited, [the court] may continue to exercise its authority as long as the risk of harm creating the emergency is ongoing"].)

In this case, we conclude as an initial matter upon review of the relevant record the juvenile court properly invoked temporary emergency jurisdiction at the commencement of the California proceedings because minor came within the statutory definition of "abandoned," meaning she had been "left without provision for reasonable and necessary care or supervision." (§ 3402, subd. (a).) Undisputedly, minor's maternal great aunt effectively relinquished her Tennessee-ordered legal guardianship over minor by taking minor to California and handing her off to minor's maternal grandmother after deciding she could no longer care for minor. Minor's grandmother, in turn, prompted the filing of the section 300 petition in this case by notifying the agency that minor had been abandoned to her care, but that she, too, was unable to take her in. Mother, for her part, admitted she was not a viable placement for minor. Among other issues, mother, at the time the proceedings commenced, was facing extradition to Texas as a result of her myriad probation violations. And, finally, alleged father had not had contact with minor in at least five years and could not even be located for purposes of these proceedings until

7

April 2013, approximately 10 months after their commencement.  Under these circumstances, we have no doubt minor's situation met the statutory requirements for the court's exercise of emergency jurisdiction on abandonment grounds.  Quite simply, had the juvenile court declined to assert temporary emergency jurisdiction, minor would have been left in this State without any readily-apparent source of protection and care, the very situation our Legislature sought to avoid when enacting section 3424. (*In re Jaheim B.* (2008) 169 Cal.App.4th 1343, 1351 ["Because the risk of harm creating the emergency was ongoing and [minor] could not immediately be returned to [mother], the court had subject matter jurisdiction under section 3424 to conduct the dependency proceeding and issue its jurisdictional and dispositional orders"]; see also § 3424, subd. (e).)

However, as explained above, the juvenile court's assumption of emergency jurisdiction is of limited duration and "does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition." (*In re C.T., supra*, 100 Cal.App.4th at p. 108.)  As such, we now must determine whether the juvenile court had a valid basis for continuing jurisdiction over minor, such that it was authorized to make the order challenged herein to terminate parental rights, which effectively modified the Tennessee dependency order.  We conclude for reasons that follow the juvenile court was warranted in exercising such jurisdiction.

As stated above, when the juvenile court took emergency jurisdiction over minor, she was already subject to juvenile court jurisdiction in Tennessee.  Accordingly, the juvenile court was required under section 3424, subdivision (d), to immediately contact the Tennessee court before continuing the proceedings.  The juvenile court complied with this rule, thereby triggering additional jurisdictional rules.  Specifically, as all parties recognize, where, as here, a court of another state has exercised jurisdiction over a child by making a child custody determination, a California court may not exercise jurisdiction to modify the other court's determination unless it has first met the statutory requirements of section 3423.  This statute provides in relevant part that, except as otherwise provided in section 3424, a California court may not modify another State's child custody determination "*unless [the California court] has jurisdiction to make an initial*

8

*determination under paragraph (1) or (2) of subdivision (a) of Section 3421 and either of the following determinations is made*:  (a) The court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 3422 or that a court of this state would be a more convenient forum under Section 3427.  [¶] (b) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."[5]  (§ 3423.)  Here, the agency contends the California juvenile court had jurisdiction to make an initial determination under section 3421, subdivision (a)(2), and also made the required determination under section 3424, subdivision (a).  We thus turn to these provisions to determine whether our court had authority to modify the Tennessee court order.

Turning first to the statutory requirement that the California court possess jurisdiction to make an initial determination under section 3421, subdivision (a)(2), the relevant language is as follows:  "(a) Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:  [¶] . . . [¶]  (2) . . . a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true: [¶] (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence. [¶] (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships."[6]

---

[5]     "Initial child custody determination" is defined by the Family Code as the first child custody determination with respect to the minor.  (§ 3402, subd. (h).)

[6]     Section 3421, subdivision (a)(1), in turn, requires that California "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state."  Here, there is no dispute that minor resided in Tennessee for much of the two-year period from 2010 to 2012, before commencement of the proceeding in California, making Tennessee, not California, her home state for purposes of this statutory scheme. (§ 3402, subd. (g).)

9

Based upon our own review of this record, we agree with the agency the juvenile court's exercise of jurisdiction over minor comported with the UCCJEA. (See *In re Jaheim B., supra,* 169 Cal.App.4th at p. 1348 [reviewing court may independently reweigh the jurisdictional facts].) Specifically, consistent with sections 3423 and 3421, subdivision (a)(2), the record confirms that the court in minor's home state of Tennessee declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and that both of the following are true: (A) minor and at least one parent have a "significant connection" with California beyond mere physical presence, and (B) substantial evidence is available in California concerning minor's need for dependency. We will explain.

First, with respect to the Tennessee juvenile court's disinclination to continue jurisdiction, the record reflects that, upon receiving a message regarding this case from Judge Linda Colfax of the San Francisco County Superior Court, Juvenile Division, a return call was placed by Judge Donna Davenport of the Rutherford County Superior Court in Tennessee. During this call, Judge Davenport spoke to Judge Colfax's colleague, Judge Hitchens, advising the judge that the Tennessee court would step aside to permit the California court to exercise jurisdiction on forum non conveniens grounds and, more specifically, "because moving the child again at this point would be detrimental, particularly because there are no relatives in Tennessee available for placement." This finding that California is the more convenient forum is amply supported by the relevant facts, including the lack of persons in Tennessee capable or available to provide long-term care for minor, the agreement among counsel for all parties (including mother) that California jurisdiction is preferable, and the presence of key interested parties (including mother, grandmother, and minor) and of current information regarding this case in California and already before the California court. (See § 3427, subds. (b)(5), (6), (8).)[7]

---

[7]    Section 3427, subdivision (b), sets forth the following eight factors for the court to consider in determining which forum is more convenient: (1) whether domestic violence has occurred or likely will occur and which state could best protect the parties and the

10

Further, we agree with the agency that the fact that the parties were not present for the conversation between Judge Hitchens and Judge Davenport and that the conversation was not recorded or transcribed are of no moment. The relevant provision, section 3410, subdivision (b), provides that the court "may" allow the parties to participate in conversations or communications between the two courts; this provision does not require such participation. Moreover, case law holds that the record must include "an account of events" between the California and non-California courts, but not necessarily "tape recordings or reporter's transcripts" of specific conversations. (*In re C.T., supra,* 100 Cal.App.4th at pp. 111-112 [concluding the statutory requirements were met where the conversations between the courts were described in memoranda and/or described by the court on the record during the next hearing].) Here, the requisite account of events exists in the form of Judge Colfax's description on the record of the conversation between Judge Davenport of Tennessee and Judge Hitchens of California shortly after the actual conversation took place.[8]

---

child; (2) the length of time the child has resided outside this state; (3) the distance between the two courts considering jurisdiction; (4) any financial hardship to the parties due to litigating in one or the other forum; (5) any agreement regarding jurisdiction among the parties; (6) the nature and location of relevant evidence; (7) each court's ability to fairly and expeditiously decide issues and hear evidence; and (8) each court's familiarity with the particular matter. (§ 3427, subd. (b).) As the agency notes, the statute requires the court to consider these factors but does not require it to make factual findings on the record as to the applicability of specific factors. (See *id.* ["[b]efore determining whether it is an inconvenient forum, a court of this state *shall consider* whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and *shall consider* all relevant factors"] [Italics added].)

[8] In light of this record, we also reject mother's contention that the juvenile court erred by failing to stay or dismiss these proceedings "pending investigation and consultation with Tennessee" regarding the more appropriate forum. In particular, the record reflects that, upon taking emergency jurisdiction over minor on abandonment grounds and upon learning of the ongoing Tennessee dependency, the California court first continued the matter to confirm the existence of the other state's proceeding, and then stayed the proceeding for two weeks to actually communicate with the Tennessee court regarding jurisdiction. As discussed above, that is exactly what the court was required to do: "A court of this state that has been asked to make a child custody

11

Second, with respect to the significant connections that minor and one or both parents have with California, the record reflects minor was born in California and did not move away until she was four years-old. In addition, a referral was received by the agency regarding minor in August 2007 alleging physical abuse by mother, although the allegations were unsubstantiated and the referral was closed. While minor spent most of the next four or so years of her life elsewhere, she did return to California for two months in 2010 to live with her maternal grandmother in the Bay Area, before returning for good in May 2012, just days before these proceedings commenced, when her legal guardian flew with her from Tennessee and again left her in maternal grandmother's care after deciding she was unable or unwilling to herself provide care. Since that time, minor has been placed in a California foster home, has been enrolled in a California school, and has received medical (including mental health and dental) treatment from California practitioners. Although still struggling at times with behavioral and emotional issues, minor is beginning to show signs of flourishing in her California environment and her foster mother has verbally committed to adopting her. These connections, we conclude, are indeed significant. (See *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 510 ["assessment of a state's 'significant connections' with a child is made at the time the jurisdictional determination is made, rather than at the time of commencement of the proceeding"].)

Moreover, there is also evidence mother has returned to California from Texas after serving her sentence for probation violations,[9] and alleged father appears to live in Oakland or Berkeley. Maternal grandmother also continues to live in the Bay Area and has become an important and stable person in minor's life, taking her on vacation and otherwise maintaining familial ties. Finally, another relative living in Palo Alto at some

determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, shall immediately communicate with the other court." (§ 3424, subd. (d).)

[9] Mother's probation condition permits her to have supervised visitation with minor, about which she is enthusiastic.

point expressed interest in caring for minor, although, given her criminal background, she does not appear to be a viable placement candidate. Regardless, we have no doubt based on the record as a whole that the requisite "significant connection" for purposes of section 3421, subdivision (a)(2)(A), has been established.

And finally, with respect to the remaining requirement that substantial evidence be available in California concerning the minor's need for dependency, we have identified, at minimum, the following material facts: the presence of minor, mother, maternal grandmother and alleged father in California, all key witnesses with respect to minor's need for dependency; the additional presence in this State of minor's foster/prospective adoptive family, her doctors and therapist, and her child welfare representatives, among others; and the many up-to-date reports and other documents prepared and submitted by the agency's social workers involved in this matter detailing the circumstances of minor's dependency, including her past abuse, mental health struggles, and frequent changes of residence and caregivers. On this record, we have no doubt the substantial evidence standard under section 3421, subdivision (a)(2)(B), has been met.

Accordingly, for the reasons stated, we agree with the agency the juvenile court's exercise of subject matter jurisdiction over minor was appropriate.

## II. Did the agency exercise due diligence in attempting to locate alleged father?

Alleged father contends the agency failed to act with due diligence in its efforts to provide him with proper notice of these proceedings. As such, he reasons, this matter must be remanded for a new hearing on jurisdiction and disposition. We disagree.

The relevant law is not in dispute. "Parents are entitled to due process notice of juvenile court proceedings affecting the care and custody of their children, and the absence of due process notice to a parent is a 'fatal defect' in the juvenile court's jurisdiction. [Citation.] Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.] The means employed to give a party notice for due process purposes must be such as one, desirous of actually informing the party, might reasonably adopt to accomplish it. [Citations.]" (*In re Claudia S.* (2005)

13

131 Cal.App.4th 236, 247.)

"If the whereabouts of a parent are unknown, the issue becomes whether due diligence was used to locate the parent. [Citations.] The term 'reasonable or due diligence' ' " 'denotes a thorough, systematic investigation and inquiry conducted in good faith.' " [Citation.]' Due process notice requirements are deemed satisfied where a parent cannot be located despite a reasonable search effort and the failure to give actual notice will not render the proceedings invalid." (*In re Claudia S., supra,* 131 Cal.App.4th at p. 247.)

Having considered the agency's efforts in this case to locate alleged father to provide him notice of the dependency proceedings, we conclude they meet the above-stated standard of due diligence. Specifically, the agency filed a due diligence report on June 28, 2012, indicating that, between June 7 and June 19, agency representatives searched for information regarding alleged father's whereabouts in public and governmental sources in Texas and California. In doing so, the agency relied on the only identifying information it had for alleged father, which consisted of his name and last known address in Texas. Shortly after this report was filed, the agency was able to obtain from mother a new Bay Area phone number for alleged father, which the social worker called without success on June 14, 15, 18, 20 and 22.

On January 22, 2103, the agency executed a declaration of due diligence to inform the court of its more recent efforts to locate alleged father. Specifically, using two recently-discovered former addresses for alleged father, the agency had searched multiple California sources, and had also attempted unsuccessfully to contact him with two recently-obtained phone numbers. The court then ordered the agency to publish a citation and summons in the San Francisco Chronicle once weekly for four consecutive weeks, which order the agency complied with, albeit without success.

In the report filed February 21, 2013 pursuant to Welfare and Institutions Code section 366.26, the social worker stated that she had been in contact with alleged father's mother (aka, paternal grandmother), who told the social worker alleged father "has never demonstrated interest in [minor's] case. She last saw him approximately five years ago.

14

According to an Email sent to [the social worker] by the paternal grandmother, [he] is reluctant to come forward and to make his whereabouts known, as he does not want to have to pay child support." Nonetheless, despite this report and without making contact with the agency, alleged father appeared for the section 366.26 hearing on April 15, 2013, and was appointed counsel. The juvenile court also continued the section 366.26 hearing until June 14, 2013, and, in the meantime, set a presumed paternity hearing for May 9, 2013. However, the presumed paternity hearing was subsequently taken off calendar pursuant to an agreement between counsel for the agency and alleged father, at which time counsel informed the court the hearing would be added back on calendar once alleged father and his counsel so decided.

When alleged father's counsel thereafter appeared at the June 14 permanency planning hearing, she requested a continuance on the ground that "during the period from the last court date to this date I have not had any contact with my client. And when I saw him in court today he informed me that he never received the letter that I sent him, nor had he – he had lost my information so he didn't have any way of contacting me." The court denied this request, noting alleged father's choice to take the presumed paternity hearing off calendar and that he "has not even cooperated to the point of contacting the department or continu[ing] to locate his attorney. If he couldn't find your information certainly people in the court could have assisted him in that regard. There really is no good cause for a continuance."

On this record, we agree with the agency that its efforts to locate alleged father – including its numerous searches of public and governmental sources, its four-week publication of his summons and citation in the local newspaper, and its efforts to obtain information as to his whereabouts from mother and other family members – sufficed to meet the due diligence standard. The agency's lack of success in this regard does not undermine the consistency and meaningfulness of its efforts. Nothing more was required, and, even if it were, we can conceive of no harm that could have resulted given the undeniable fact alleged father was informed of the permanency planning hearing, as both he and his counsel were present. In addition, the juvenile court made efforts to set a

15

presumed paternity hearing on his behalf before the selection and implementation hearing, which would have occurred but for his own choice to take it off calendar and not add it back.  Under these circumstances, we reject his due process challenge. (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1124 [affirming order terminating parental rights where father suffered no prejudice from inadequate notice].)

Finally, given our conclusion neither parent's challenge on appeal withstands scrutiny, we need not consider their additional arguments that reversal of the judgment as to one parent requires reversal as to the other.

### DISPOSITION

The June 26, 2013, order to terminate parental rights is affirmed.


_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.

16